IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 16-10106 |
| ISMAEL VILLARREAL | § | |
| and | § | |
| ANA MARIE VILLARREAL, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| | § | CHAPTER 13 |

### MEMORANDUM OPINION

Pursuant to section 1328(a), a discharge in a chapter 13 case occurs upon a debtor's "completion . . . of all payments under the plan."[1] The Villarreals sought entry of discharge, certifying that they made all payments required by their chapter 13 plan of reorganization. This Court sua sponte questioned whether the Villarreals were entitled to a chapter 13 discharge given that, despite their success in obtaining a post-confirmation mortgage loan modification to cure a default on post-petition ad valorem taxes, which they were required but failed to pay, the Villarreals never modified their chapter 13 plan to remove the mortgage or ad valorem taxes from the plan itself. The Court conducted an evidentiary hearing on December 9, 2021 and ordered briefing. In the interim, the Villarreals filed a plan modification. On February 10, 2022, the Court conducted a further hearing and continued both matters to April 7, 2022. All briefing has now been submitted and the matter is ripe for determination. For the reasons stated herein, Ismael and Ana Marie Villarreal's plan modification is not confirmed without prejudice for refiling, if filed no later than

---

[1] 11 U.S.C. § 1328(a).

April 26, 2022. Failure to refile a plan modification by April 26, 2022 will result in a final order denying a § 1328(a) discharge without further order of this Court. Ismael and Ana Marie Villarreal's and motion for entry of chapter 13 discharge is denied.

## I. FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, incorporating Federal Rules of Civil Procedure 52 and 9014. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

1. On April 13, 2016, Ismael and Ana Marie Villarreal ("*Debtors*") filed their initial petition under chapter 13 of the Bankruptcy Code.[2]
2. On April 22, 2016, Debtors filed their Chapter 13 Uniform Plan and Motion for Valuation of Collateral.[3]
3. On June 20, 2016, Debtors filed an amended Chapter 13 Uniform Plan and Motion for Valuation of Collateral ("*Plan*").[4]
4. On June 26, 2016, the Court confirmed Debtors' Plan.[5]
5. On August 24, 2016, CitiFinancial Servicing LLC, c/o Ditech Financial Servicing LLC ("*Ditech*"), filed Claim No. 18-1 in the amount of $33,758.09 secured by real property described as 1161 N. Reagan St, San Benito Texas 78586 ("*Debtors' Homestead*"). The Note

---

[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e., §) thereof refers to the corresponding section in 11 U.S.C.
[3] ECF No. 15.
[4] ECF No. 32.
[5] Min. Entry June 26, 2016.

secured by Debtors' Homestead had a maturity date of September 21, 2017. Debtors' Plan, however, reflects a maturity date of December 1, 2019.[6]

6. On November 30, 2017, Claim No. 18-1 was transferred to Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust A ("*Wilmington Savings Fund*").[7]

7. On December 17, 2020, Wilmington Savings Fund transferred Claim No. 18-1 to Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust VII-A ("*Wilmington*").[8]

8. On April 5, 2021, Wilmington filed its "Notice of Postpetition Mortgage Fees, Expenses and Charges" ("*NPE*"),[9] stating that on March 23, 2021, Wilmington advanced $7,426.58 for payment of certain taxes owed to Cameron County. An attachment to the NPE identifies taxes due from 2015–2020, but Wilmington's NPE does not identify the years for which it paid the taxes to Cameron County.

9. On June 24, 2021, Debtors filed a single pleading self-styled as "Motion to Refinance Mortgage" ("*Motion to Refinance*").[10]

10. On July 2, 2021, Wilmington withdrew its NPE.[11]

11. On September 8, 2021, the Court approved the Motion to Refinance after a continued hearing on the matter.[12]

12. On September 9, 2021, Trustee filed her "Chapter 13 Trustee's Notice of Plan Completion" ("*Notice of Plan Completion*") certifying, inter alia, that Debtors made all of their payments to the chapter 13 trustee as required by the order confirming their Plan.[13]

13. On September 10, 2021, the Court issued its "Order to File § 1328 Certification" ("*Order to Certify*").[14] On the same date, the Court issued its order terminating Debtors' Plan payments.[15]

---

[6] ECF No. 32 at 7, ¶ 8.
[7] ECF No. 46.
[8] ECF No. 83.
[9] ECF No. 86.
[10] ECF No. 87.
[11] ECF No. 88.
[12] ECF No. 108.
[13] ECF No. 109.
[14] ECF No. 110.
[15] ECF No. 111.

14. On September 23, 2021, Debtors filed their "Debtors Certification, Motion for Entry of Chapter 13 Discharge" ("*Certification*") certifying, inter alia, that "[w]e have made all payments required by our confirmed chapter 13 plan."[16]

15. On December 9, 2021, the Court held a hearing on Debtors' Certification and at the conclusion of the hearing ordered briefing and continued the matter to a final hearing on February 10, 2022.[17]

16. On January 10, 2022, Debtors filed a "Uniform Modification of Confirmed Plan and Motion for Valuation of Collateral."[18]

17. On January 12, 2022, Debtors filed an "Amended Uniform Modification of Confirmed Plan and Motion for Valuation of Collateral" ("*Plan Modification*").[19]

18. On January 18, 2022, Debtors filed their brief in support of discharge ("*Debtors' Brief*").[20]

19. On January 27, 2022, the chapter 13 trustee ("*Trustee*") filed her brief in support of discharge eligibility ("*Trustee's Brief*").[21]

20. On February 10, 2022, the Court held a further hearing and continued the matter to April 7, 2022.

## II. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[22] This court determines that pursuant to 28 U.S.C. §§ 157(b)(2)(A), (J), (L), and (O) this proceeding contains core matters as it primarily

---

[16] ECF No. 118.
[17] Min. Entry December 9, 2021.
[18] ECF No. 31.
[19] *Id.*
[20] ECF No. 133.
[21] ECF No. 134.
[22] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

involves matters pertaining to Debtors' discharge, the administration of the estate and confirmation of Debtors' Amended Modification.[23] This matter is also core under the general "catch-all" language because this matter is the type of proceeding that can only arise in the context of a bankruptcy case.[24] There is no state law equivalent for confirmation of a chapter 13 plan of reorganization or the determination of eligibility of discharge pursuant to 11 U.S.C. § 1328.

This Court may only hear a case in which venue is proper.[25] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtors' chapter 13 case is presently pending in this Court. Therefore, venue is proper.

### B. Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to enter a final order.[26] The present dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (J), (L), and (O) because it concerns administration of the estate, confirmation of Debtors' chapter 13 plan and eligibility for discharge. Plan confirmation "alters the status quo and fixes the parties' rights and obligations[,]" moving the bankruptcy case forward.[27] Thus, an order confirming a plan finally disposes of a discrete issue within the larger bankruptcy case, constituting a final order.[28]

---

[23] *See* 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (L), (O).
[24] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).
[25] 28 U.S.C. § 1408.
[26] *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 575 U.S. 665, 668–710 (2015) (holding that parties may consent to jurisdiction on non-core matters).
[27] *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015).
[28] *See id.* (citing *Howard Delivery Serv, Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657, n.3 (2006)).

This Court has the constitutional authority to enter a final order here because this is a core proceeding and there is no *Stern* issue. Interpreted narrowly, *Stern* is limited to one specific core proceeding, § 157(b)(2)(C), stripping bankruptcy courts of constitutional authority to enter a final order where a state law counterclaim is not resolved in the process of ruling on a creditor's proof of claim.[29] Neither § 157(b)(2)(C) nor state law claims are implicated in this proceeding, so this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[30] Alternatively, even if *Stern* applies to all of the categories of core proceedings,[31] this Court still concludes that *Stern* does not prohibit this Court from entering a final order in this dispute. In *Stern,* the debtor filed a counterclaim based *solely* on state law; whereas, here, confirmation of a chapter 13 plan of reorganization, 11 U.S.C. § 1329, and the granting of a discharge, 11 U.S.C. § 1328, are based *exclusively* on express provisions of the Bankruptcy Code and judicially-created bankruptcy law interpreting those provisions. This Court is therefore constitutionally authorized to enter a final order or judgment.

### III. ANALYSIS

**A. Debtors' Plan**

---

[29] 564 U.S. at 503.
[30] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . . We decline to extend *Stern*'s limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).
[31] *See First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . . .").

Debtors are below median income earners and as such were only required to file a thirty-six month plan.[32] Nevertheless, Debtors' confirmed Plan called for sixty monthly payments in the amount of $1,725 for a total of $103,500 over a five year period.[33] The Plan, inter alia, called for payment of $9,720 in ongoing mortgage payments to Ovation Services, LLC in monthly installments of $162 plus payment of $4,644.86 in pre-petition arrearages made through Trustee;[34] payment of 2016 and future ad valorem taxes to Cameron County and San Benito CISD made directly to those entities by Debtors;[35] and payment of $33,322 at 5.50% interest made pro rata to Wilmington (listed as Ditech in the Plan) for a total of $38,007.78 over the life of the Plan paid through Trustee.[36] Debtors' first monthly payment was scheduled for May 2016 and their final payment was received by Trustee on June 9, 2021.[37] The Plan was never modified.

### B. Mortgage loan modification

On June 24, 2021, Debtors filed their Motion to Refinance, requesting to refinance their mortgage with Wilmington ("*Loan Modification*").[38] The terms of the Loan Modification were as follows:

a. The Maturity date has been extended from July 01, 2021 to December 01, 2022.

b. The Next payment date will be due on July 01, 2021, and will continue monthly thereafter until the maturity date.

c. Effective 6/1/2021, the amount payable under the Note and Security Instrument ("the Unpaid Principal Balance") shall be increased to $11,754.18 consisting of the amount(s) loaned to Consumer by Lender, which includes the arrears

---

[32] ECF No. 32.
[33] ECF No. 32 at 1, ¶ 1.
[34] *Id*. at 3, ¶ 4.
[35] *Id*. at 7, ¶ 7.
[36] ECF No. 32 at 7, ¶ 8.
[37] BSS 13NETWORK, https://www.13network.com/ (last visited Apr. 8, 2022).
[38] ECF No. 87 at 2, ¶ 8.

capitalized of $7,504.49.[39]

The Loan Modification Agreement attached to the Loan Modification as Exhibit A reflects that the $11,754.18 was comprised of an unpaid principal balance of $4,249.69 and unpaid charges or "new money" of $7,504.49.[40] This Court approved the Loan Modification on September 9, 2021.[41]

### C. Debtors' certification

On September 23, 2021, Debtors filed their Certification stating, inter alia, that they made all payments under the Plan.[42] Debtors' Brief contradicts that sworn statement. The Brief states that "Debtors failed to make property tax payments for 2017, 2018, 2019, 2020 which were required under the Plan."[43] That failure resulted in the tax advance by Wilmington and subsequent Loan Modification.[44] The Plan was never modified to reflect this change.

Additionally, at first blush, it appears from the Loan Modification that Debtors did not make all payments under the Plan to Wilmington. Exhibit A of the Loan Modification reflects an unpaid principal balance of $4,249.69.[45] While Claim No. 18-1 was filed in the amount of $33,758.09, Debtors' Plan provided that the principal amount of the claim was $33,322 at a 5.50% interest rate, for a total of $38,007.78 to be paid through Trustee over the life of the Plan ("*Wilmington's Claim*").[46] Trustee's records reflect that Trustee disbursed $38,007.78 to Wilmington over the life of Debtors' Plan.[47]

---

[39] *Id.*
[40] ECF No. 87-1 at 2.
[41] ECF No. 108.
[42] ECF No. 118 at 2, ¶ 2.
[43] ECF No. 133 at 3, ¶ 5.
[44] *Id.*
[45] ECF No. 87-1 at 2.
[46] ECF No. 32 at 7, ¶ 8.
[47] BSS 13NETWORK, https://www.13network.com/ (last visited Apr. 8, 2022).

When questioned by the Court about the $4,249.69, Debtors' counsel explained that he suspects the amount represents the difference between the interest rate set forth in the Plan for Wilmington's Claim and the contractual interest rate that Wilmington would have charged absent bankruptcy.[48] That may or may not be true. There is no evidence in the record either way. However, pursuant to § 1327(a), "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Because Trustee's records reflect full payment of Wilmington's Claim, the $4,249.69 cannot be part of Wilmington's Claim and was not due under the Plan. Rather, that amount, in addition to the $7,504.49 identified as unpaid charges, totaling $11,754.18 constitutes post-petition financing, separate and apart from Wilmington's Claim. As such, the only payments Debtors failed to make under the Plan were direct payments to Cameron County for ad valorem taxes.

As discussed in more detail below, while the Court finds that Debtors' Certification was not made in bad faith, by now claiming that they did not in fact make all such payments, Debtors have rendered their Certification false. Debtors did not withdraw their Certification.

**D. Plan modification**

Section 1329 of the Bankruptcy Code provides a means for debtors, trustees, and unsecured creditors to modify a confirmed chapter 13 plan at any time after confirmation of the plan but before the completion of payments under the plan to adjust for circumstances that may arise

---

[48] February 10, 2022 Hearing at 10:38:10–10:40:45.

during the plan's lifetime.[49] Section 1329(a) lists four bases for modification. A plan "may be modified . . . to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance . . . .[50]

**1. The Loan Modification cannot be deemed a de facto plan modification because it does not comply with the statutory provisions and rules applicable to plan modifications**

Debtors first urge this Court to deem the Loan Modification a de facto modification of Debtors' Plan.[51] In *In re Balderas*, 328 B.R. 707, 719 (Bankr. W.D. Tex. 2005), the court stated that "post-confirmation alterations in plan distributions can be seen as a *de facto* modification of the plan." Nevertheless, modification can only be effected if such modification complies with the applicable statutory provisions and rules: § 1329, Federal Rule of Bankruptcy Procedure 3015, and Bankruptcy Local Rule 3015-1(c).[52]

---

[49] *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir.2006) (stating that modification is "based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly").
[50] 11 U.S.C. § 1329(a).
[51] ECF No. 133 at 5, ¶¶ 9–11.
[52] *See In re Bosse*, 407 B.R. 444, 448 (Bankr. D. Maine 2009) ("Such treatment would effect a sub rosa plan modification, as it would 'alter the amount of the distribution to a creditor whose claim is provided for by the plan . . . .' And the modification would be effected without compliance with § 1329(a) and Fed. R. Bankr. P. 3015.") (citations omitted).

"Compliance with § 1329 includes 'the filing of a proper motion for modification, which motion must be noticed to all scheduled creditors or at the very least, all creditors holding allowed claims in the confirmed Chapter 13 plan.'"[53] Debtors' Loan Modification indicates that it was served on "all creditors of notice."[54] Section 1329(a) also states that "the plan may be modified, *upon request* of the debtor, the trustee, or the holder of an allowed unsecured claim . . . ."[55] Debtors' Loan Modification makes no such request, it makes no mention of the ad valorem taxes Debtors were required to pay directly under the Plan; it merely expresses Debtors' intent to "refinance their mortgage with Wilmington."[56] Absent a request to modify the Plan, the plain language of § 1329 is not satisfied.

Additionally, Rule 3015(h) provides:

> A request to modify a plan under . . . § 1329 of the Code shall identify the proponent and shall be filed together with the proposed modification.  The clerk, or some other person as the court may direct, shall give the debtor, the trustee, and all creditors not less than 21 days' notice by mail of the time fixed for filing objections, and if an objection is filed, the hearing to consider the proposed modification, unless the court orders otherwise with respect to creditors who are not affected by the proposed modification.

Here, Debtors' Loan Modification contained the proper Bankruptcy Local Rule 9013-1(b) language, notifying parties in interest they had 21 days to respond to the Motion.[57] While that language complies with the timing requirements of Rule 3015(h), no proposed modification was filed.

---

[53] *In re Wallace*, 259 B.R. 646, 648 (Bankr. E.D. Tenn. 2001) (quoting *In re Lynch*, 109 B.R. 792, 795 (Bankr. W.D. Tenn. 1989)).
[54] ECF No. 87 at 3–4.
[55] Emphasis added.
[56] ECF No. 87 at 2, ¶ 7.
[57] ECF No. 87 at 1.

Thus, Debtors' Loan Modification was not in full compliance with Rule 3015(h) either. Lastly, Local Rule 3015-1(c) provides:

> To obtain a modification of a confirmed chapter 13 plan:
>
> (1) The party seeking to modify the plan must file (i) a proposed modified plan and a proposed modified plan summary, each utilizing the official forms posted on the Court's website; and (ii) a proposed amended wage order or electronic payment mechanism consistent with the proposed modification.
>
> (2) The proposed modified plan must be self-calendared for a hearing on the next available date as scheduled on the Chapter 13 Trustee's website.
>
> (3) If the proposed modified plan is filed by the Debtor(s), the Debtor(s) must simultaneously file amended schedules I and J.

Debtors' Loan Modification did not comply with any of Local Rule 3015-1(c)'s requirements.

Accordingly, because Debtors' Loan Modification did not comply with the requirements of § 1329, Rule 3015(h), or Local Rule 3015-1(c), this Court finds that the Loan Modification does not constitute a de facto plan modification.

### 2. Debtors' Plan Modification was timely filed

In the alternative, Debtors ask this Court to confirm their Plan Modification, filed seven months after Debtors submitted their final payment to Trustee in June 2021.[58] The Plan Modification requests that the Loan Modification be incorporated into the Plan and further states that Debtors paid the 2016 ad valorem taxes direct and that the 2017–2020 ad valorem taxes were included in the Loan Modification.[59]

---

[58] ECF No. 132.
[59] *Id.* at 1, ¶ 3(E).

Debtors argue that because they failed to make direct payments to Cameron County as required by the Plan, they have not completed payments under the Plan and thus, their Plan Modification is timely, despite Debtors' failure to request modification prior to June 2021. Debtors cite two cases in support, *In re Young*, No. 12-11509, 2017 Bankr. LEXIS 3170 (Bankr. M.D. La. Sept. 19, 2017) and *In re Diggins*, 561 B.R. 782 (Bankr. D. Colo. 2016).

The plain language of § 1329 permits modification "[a]t any time after confirmation of the plan but before the completion of payments under such plan . . . ."[60] Proper interpretation of § 1329 hinges on the phrase "payments under such plan." Some courts have held that a plan is complete when the debtor completes all payments to the trustee.[61] As this Court noted in *In re Gonzales*, 570 B.R. 788, 795 (Bankr. S.D. Tex. 2017), those cases did not address a situation in which debtors were required to make direct payments under the terms of a confirmed plan.[62] Because direct payments to a creditor are payments under the plan, just as payments to a trustee are payments under the plan,[63] both are considered in determining whether plan modification is timely.

In *In re Roife*, 2013 Bankr. LEXIS 5005, at *6–7 (Bankr. S.D. Tex. Nov. 6, 2013), the court stated that "'[p]ayments made outside of the plan' is the colloquial term used for describing payments made directly by a debtor. 'Payments made under a plan' is the colloquial term used to describe payments made through the chapter 13 trustee." Those colloquial terms are used somewhat inaccurately, however. Because a debtor's direct payments to a creditor also constitute

---

[60] 11 U.S.C. § 1329(a).
[61] *See In re Ezzell*, 438 B.R. 108, 115 (Bankr. S.D. Tex. 2010); *In re Sounakhene*, 249 B.R. 801, 804 (Bankr. S.D. Cal. 2000).
[62] 570 B.R. 788 (Bankr. S.D. Tex. 2017).
[63] *E.g.*, *Kessler v. Wilson (In re Kessler)*, 655 F. App'x 242, 244 (5th Cir. 2016); *In re Foster*, 670 F.2d 478, 488 (5th Cir. 1982); *In re Gonzales*, 570 B.R. at 796; *In re Young*, 2017 Bankr. LEXIS 3170, at *3.

payments under the plan in the Fifth Circuit they are not "payments made outside of the plan." Payments made outside of the plan are those made by third parties to creditors.[64] Payments made outside the plan do not fall within the plain language of § 1329(a), which requires courts to consider whether "completion of payments *under* such plan" has occurred.

Here, Debtors' Plan contemplated payment of ad valorem taxes to Cameron County and San Benito CISD by Debtors, not by Wilmington. Thus, even though the amount owed to Cameron County and San Benito CISD was already paid when Debtors filed their Plan Modification, it was paid outside the plan by Wilmington. Therefore, at the time Debtors filed their Plan Modification, they had not yet completed payments under their Plan. Debtors' Plan Modification is timely.

### 3. Debtors' Plan Modification is not confirmed

Debtors' Plan Modification proposes to incorporate the Loan Modification into the Plan, deem the Plan paid in full, and remove Debtors' duty to pay Cameron County and San Benito CISD directly for the 2017–2020 ad valorem taxes.[65] Paragraph 8(B) details the terms of the "Old Loan" and the "New Loan" with Wilmington.[66] Paragraph 8(B) also states, "[t]he holder of the claim secured only by a security interest in real property that is the Debtor(s)' principal residence has agreed to refinance the security interest and claim on the terms set forth on the document

---

[64] *See, e.g.*, 11 U.S.C. § 1329(a)(3) (providing that a plan may be modified to "alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan."); COLLIER ON BANKRUPTCY ¶ 1329.04[3] (Richard Levin & Henry J. Sommer eds., 16th ed.) (stating that § 1329(a)(3) permits modification "to reflect proper credit for any payments received by the holder outside of the chapter 13 plan. Sources of outside payment include codebtors, sureties, guarantors and the reclamation or disposition of collateral.").

[65] ECF No. 132 at 1, ¶ 3(E).

[66] ECF No. 132 at 5, ¶ 8(B).

attached as Exhibit 'B.'" Oddly, instead of attaching as Exhibit B, Debtors attach the Loan Modification Agreement provided by Wilmington immediately below Paragraph 8(B).[67]

First, Debtors' Plan Modification violates Paragraph 28, which states "[b]y filing this Modified Plan, Debtor(s) and their counsel represent that the Modified Plan is in the official form authorized by the Court. There are no addenda or other changes made to the official form, except those contained in Paragraph 29."[68] Under Paragraph 29 "Non-standard Provisions[,]" Debtors stated "[n]one."[69] By appending the Loan Modification Agreement to the end of Paragraph 8(B), Debtors added an addenda and changed the official form, without noting so in Paragraph 29 as explicitly required.

Second, Paragraph 8(B) states that "[t]he refinancing brings the loan current in all respects."[70] Debtors' Plan Modification attempts to treat Wilmington's Claim as a "cure and maintain" claim under § 1322(b)(5), which states:

> [T]he plan may . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due *after* the date on which the final payment under the plan is due[.][71]

According to Debtors' Plan, Wilmington's Note matured on December 1, 2019, before the final payment under the Plan was due.[72] Therefore, Wilmington's Claim was not treated under § 1322(b)(5). In contrast, § 1322(c)(2) provides:

> [I]n a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal

---

[67] ECF No. 132 at 6–18.
[68] ECF No. 132 at 14, ¶ 28.
[69] *Id.* ¶ 29.
[70] *Id.* at 5, ¶ 8(B).
[71] Emphasis added.
[72] ECF No. 32 at 7, ¶ 8.

> residence is due *before* the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.[73]

Because Wilmington's Claim was secured by a security interest in Debtors' principal residence and matured before Debtors' final payment under the Plan was due, that Claim was treated under § 1322(c)(2) and was permitted to be modified pursuant to § 1325(a)(5). Therefore, Debtors' Plan proposed to pay Wilmington's Claim pro-rata over the life of the Plan. As this Court found above, the $11,754.18 represented by the Loan Modification was not part of the Plan. Thus, the Loan Modification does not transmogrify Wilmington's Claim from one treated under § 1322(c)(2) to one treated under § 1322(b)(5).

> Third, § 1329(c) provides:
>
> A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Debtors' Plan extended the maximum amount of time permitted under § 1329(c), 60 months. Debtors first payment was due May 2016, and they made their final payment in June 2021, in month 61. The Loan Modification Agreement states that the first payment is due July 1, 2021, and every month thereafter until the principal and interest are paid in full.[74] The new maturity date of the loan is December 2022.[75] This Court is expressly without authority pursuant to § 1329(c) to

---

[73] Emphasis added.
[74] ECF No. 132 at 8, ¶ 3.
[75] *Id.*

confirm Debtors' Plan Modification which proposes payments under the Plan for a wholly new loan to begin beyond Debtors' 60-month Plan term and continue well beyond.[76]

Accordingly, Debtors' Plan Modification is not confirmed without prejudice for refiling, if filed no later than April 26, 2022. Failure to refile the plan modification by April 26, 2022 will result in a final order denying a § 1328(a) discharge without further order of this Court for the reasons stated below.

### E. Debtors' request for a § 1328 discharge is denied

Section 1328(a) provides "as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . . ." Contrary to Debtors' sworn Certification that "[w]e have made all payments required by our confirmed chapter 13 plan[,]"[77] Debtors now assert that they did not in fact make all such payments.[78] That assertion renders their Certification, filed under penalty of perjury, false. Debtors never withdrew their Certification. Additionally, Debtors' admission that they did not make all Plan payments disqualifies Debtors from obtaining discharge at the present time because there has not been a "completion by the debtor[s] of all payments under the plan."[79]

Trustee objected to Debtors' Plan Modification, arguing that "the prior loan modification cured the payment default[]"[80] and that it "is redundant and unnecessary as the plan has been

---

[76] *Cf. In re Young*, 2017 Bankr. LEXIS at *7 (finding that because the debtor was not at the end of her 60-month plan period, time remained for her to modify her confirmed plan to account for her approved loan modification that cured post-petition arrearages and thus, § 1329(c) did not prevent the proposed modification).
[77] ECF No. 118 at 2, ¶ 2.
[78] ECF No. 133 at 3, ¶ 5.
[79] 11 U.S.C. § 1328(a).
[80] ECF No. 134 at 3, ¶ 8.

completed and all payments have been made."[81]  Nevertheless, Trustee asserts that "Debtors are entitled to a discharge under 11 U.S.C. § 1328."

Contrary to Trustee's assertion, absent modification of their Plan, Debtors are not entitled to a discharge.  Section 1327(a) bound Debtors by the terms of their confirmed Plan and under those terms, Debtors—not a third party—were required to pay ad valorem taxes to Cameron County and San Benito CISD.  Because Debtors did not make those payments, this Court cannot conclude that there was "completion *by the debtor* of all payments under the plan" as this Court is required to find to grant discharge.[82]  Section 1329(a)(3) provides the bases for modification in this exact situation: to account for payments made "other than under the plan."  Stated differently, to account for payments made by third parties outside the plan.[83]  A debtor's failure to modify his plan to account for such payments jeopardizes the debtor's entitlement to discharge where the debtor is liable for such payments under the terms of his plan.[84]

Accordingly, Debtors' request for entry of a § 1328(a) discharge is denied.

## IV.   CONCLUSION

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

---

[81] *Id.*
[82] 11 U.S.C. § 1328(a).
[83] COLLIER ON BANKRUPTCY ¶ 1329.04[3].
[84] *See* 11 U.S.C. § 1328(a).

SIGNED April 12, 2022

Eduardo Rodriguez
United States Bankruptcy Judge